Westbrook, J.
The relator has, in compliance with an order of this court dated November 5, 1878, published in a newspaper owned and controlled by him and printed in the county of Greene, the terms of the supreme court, circuit court and court of oyer and terminer appointed to be held in the third judicial district of this state, of which the county of Greene forms a part, during the time of such publication. His bill was presented to the board of supervisors of the county of Greene for audit, and on the rejection of such bill, upon the ground that the same was not a legal charge against the county, the relator asks that a mandamus to compel its audit may issue.
It should be further stated that the order required the clerk of the court to issue a certificate for the amount of the bill for performing the service ordered, payable out of the fund provided for the contingent expenses of the court.
The application presents two questions, viz.: (1st.) Was the order one within the power of the court; and (2d.) Has the relator chosen the proper remedy ?
In the discussion of the first question it will be assumed, for the point is too clear to admit of discussion, that the holding of courts in a county must oftentimes involve expenses for which statutes make no provision. If proof of this assertion is needed, it will be found in the many orders made during a session of the court for payments which no express enactment warrants and the justice and legality of which no one will question. Such expenses are properly covered by the term “ contingent expenses,” which, when “ necessarily incurred for the use and benefit of a county, are a county charge ” (2 R. S. [7th ed.], 979, sub. 15, sec. 2); and to enable “their respective county treasurers to pay such contingent expenses as may become payable from time to time, the board of supervisors of the several counties shall annually cause *485 such sum to be raised in advance in their respective counties, as they shall deem necessary for that purpose ” (Same vol. and page, of R. S., sec. 5).
As, then, there are contingent expenses necessarily incurred in the holding of courts for which no express statute provides, and as the board of supervisors of a county must provide a fund to be placed in the hands of its county treasurer, “ to pay such contingent expenses as may become payable from time to time,” it necessarily follows that a court held in a county must determine what is a proper and lawful charge upon such fund. Either this conclusion must be adopted, or else the position must be assumed that the county treasurer is to pass upon the validity of every court order directing a payment from the contingent fund. The statute contemplates a payment by the county treasurer “ in advance ” of an audit by the supervisors, and hence it follows that the assertion just made is correct, that either the court or the county treasurer must determine what is a legal expense against the county and a valid charge upon its contingent fund. It is not difficult to determine as between the two, the court and the county treasurer, where the authority to decide is and should be lodged. The thought is not to be entertained that the legislative intent was that the means necessary to conduct the machinery of courts should be under the control of any body or officer other than those who are charged with the official duty of controlling its action and directing its energy. It is true that the power of a court may be abused, but reasoning against the existence of a power based upon its liability to abuse is as, effectual against any other body in which it may be supposed to reside as it is in regard to courts; and as a fact it will be found that courts are as economical in the expenditure of money as boards of supervisors, and their judgment as to legality, need and propriety of an expenditure made in connection with the holding of courts in a county, as safe and as wise as that of supervisors or county treasurers.
*486 Having reached the conclusion that courts must determine what is a legal and proper expense and charge to be paid by the county treasurer in regard to the holding oí such courts, it follows that the order made by the court in favor of the relator should be obeyed by the county treasurer. N either the propriety nor the need of the order can be now considered. Both were determined when such order was made; and this court, though held by another judge, will not sit in judgment upon an order duly entered when presided over by one of his associates. To do so would be to confer upon every county treasurer the power to block the machinery of a court by refusing to obey an order as to the disposition of a fund in his hands, placed there to keep such machinery in motion, until the same court held by another judge again passed upon its propriety and legality. If, however, the discretion of the judge who made the order is in this way reviewable, it is due to him to say that there are no facts shown to justify the inference of an abuse of power. The advertisement of the terms of the courts directed by the order was, it seems to me, a wise and proper act. It is important that the people of a county should be informed as to the sittings of courts in their midst, and the very small expenditure incurred for that purpose is scarcely equal to the sum which the county will pay for the increased per diem allowance to its representatives while they have considered the propriety and legality of the charge. This statement is made without any intent to criticise the action of the board of supervisors, or to question its good faith, but only for the purpose of forcibly presenting the comparatively small expenditure which is resisted.
While entertaining no doubt that the order made by this court should have been obeyed by the county treasurer, and that obedience thereto is enforceable against him, it is not seen, however, on what ground the mandamus asked against the boai’d of supervisors can be granted. Its members have disobeyed no order of this court; on the contrary, the order sought to be enforced is upon and against a fund in other *487 hands, and against and to another official. While, however, the present motion must for the reason just stated be refused, such denial will be without costs, and without prejudice to the right of the relator to move for a mandamus against the county treasurer. It is evident that the legality of the order of November 5, 1878, has been the subject of controversy, and not the liability of the body against which this proceeding is taken. Indeed, it was stated upon the argument that in refusing to obey the order the county treasurer acted by direction of the board of supervisors. As the court thinks that the action of the coimty treasurer in refusing to obey the order was unjustifiable, and that of the supervisors in upholding him in such refusal equally erroneous, it cannot award costs against a party who has a real grievance to redress, because he has taken his legal remedy against a party who is morally but not legally responsible for the facts which make a proceeding in a court a necessity.
Perhaps it ought to be said, in conclusion, that if at any time an order for payment of a bill out of the fund provided for the contingent expenses of courts is unwise or improvident, any judge to whose attention it is called will cheerfully correct or revoke it, but it is not the prerogative of a board of supervisors nor of a county treasurer to adjudge an order of this court void and incapable of enforcement.